CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUL 05 2011
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| PHYLLIS E. JONES, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 6:10cv00028 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Phyllis E. Jones ("Jones") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Jones argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to give controlling weight to the opinion of her treating physician, Dr. Brenda Waller, failing to properly evaluate her complaints of pain, and relying on a functional capacity evaluation ("FCE") that is referenced by Dr. Joseph Wombwell but is not included in the record. Having reviewed the administrative record and considered the arguments of counsel, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**, the Commissioner's Motion for Summary Judgment (Dkt. #14) is **GRANTED**, and Jones' Motion for Summary Judgment (Dkt. #12) is **DENIED**.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d

171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security

benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Jones was born in 1954, completed the tenth grade and obtained a GED. (Administrative Record, hereinafter "R." at 36.) She lives with two of her grandchildren, ages eight and nine. (R. 35-36.) She previously worked as a sander, cleaner, hostess and dining room attendant. (R. 37-38.) Jones filed an application for benefits on March 13, 2006, claiming disability as of July 28, 2004 based on the amputation of her left little finger, nerve damage to her arm and shoulder, high blood pressure and diabetes. (R. 78, 113-17, 128.) The Commissioner denied her

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

application for benefits based on a medical records review on June 20, 2006 and this decision was confirmed on reconsideration on December 4, 2006. (R. 80, 91.) An administrative hearing was held on November 6, 2007 before an ALJ. (R. 29-77.)

In a decision issued December 28, 2007, the ALJ found that Jones had severe impairments consisting of diabetes mellitus with poorly controlled blood sugar levels, obesity and a finger avulsion with residual neuropathy.[2] (R. 16.) Considering these impairments, the ALJ found that Jones retained the RFC to perform light work, except that due to her impairments, she must avoid repetitive use of the left arm and workplace hazards, such as moving machinery and unprotected heights. (R. 17.) The light work must accommodate a missing little finger on her left hand and involve only occasional reaching overhead and pushing or pulling with her right upper extremity, balancing, stooping, kneeling, crouching or crawling and no climbing ladders, ropes or scaffolds. (R. 17.) Based on this RFC, the ALJ determined that Jones can perform her past relevant work as a dining room attendant and a fast food hostess. (R. 23.) Accordingly, the ALJ concluded that Jones is not disabled under the Act. (R. 23.) The Appeals Council denied Jones' request for review and this appeal followed. (R. 1-3.) Jones and the Commissioner have filed respective motions for summary judgment, and the court heard oral argument on May 31, 2011.

### III

Jones argues on appeal that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Brenda Waller, and improperly discounted her complaints of pain. In addition, Jones claims that the ALJ erred in relying on a functional capacity report ("FCE") that is referenced by Dr. Joseph Wombwell, her treating orthopedist, but is not included in the record.

---

[2] The court notes that the ALJ mistakenly references an avulsion of the right little finger in his finding; however, this error is immaterial as the rest of the decision correctly states that plaintiff suffered an avulsion of the little finger on her left hand.

Dr. Waller reported on March 15, 2007 that Jones would likely have ongoing problems related to postural dysfunction and muscle imbalance due to heavy use of the right arm and limited use of the left. (R. 319.) She further stated that Jones' neck problems would likely continue due to the traction injury to the neck and arm caused at the time of amputation. (R. 319.) Dr. Waller opined that Jones could not be gainfully employed; however, for administrative purposes she released her to work for 4 hours per day, five days a week with no lifting, carrying, or repetitive work for the right arm, and no lifting, carrying, repetitive or fine motor manipulation work for the left hand. (R. 319.) Dr. Waller also stated that Jones should not drive due to medication which impaired her alertness. (R. 319.) Dr. Waller wrote in her subsequent treatment notes that she was "doubtful that plaintiff will be gainfully employed." (R. 303, 311.) On August 20, 2007, Dr. Waller completed an Estimated Functional Capacity Form where she opined that Jones was occasionally able to lift and carry up to 10 pounds. (R. 300.) Dr. Waller stated that Jones could occasionally push, pull and bend, but could never squat, crawl, climb or reach above shoulder level. (R. 300.) Dr. Waller further stated that Jones could not work for an eight-hour day (R. 300) and could not grasp or perform fine manipulation with her left hand. (R. 300-01.) Dr. Waller opined that Jones could not return to her former job, or any other work. (R. 301.) Similarly, Dr. Waller indicated in August 27, 2007 correspondence to Jones' vocational consultant, as well as an October 30, 2007 letter to Jones' lawyer, that Jones was "unemployable." (R. 326, 338.)

A treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from

your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...."); Social Security Ruling 96-2p.

In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527(d). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

In this case, the ALJ rejected Dr. Waller's opinion that Jones could not perform any gainful activity. Considering the longitudinal treatment record consisting of generally routine and conservative treatment, the lack of objective findings in Dr. Waller's treatment notes, the opinions of Dr. Wombwell, Dr. Dobyns and the DDS reviewing physicians and Jones' activities of daily living, substantial evidence supports the ALJ in this regard. The administrative record as a whole reflects routine, conservative treatment and does not support the degree of limitation set forth by Dr. Waller or claimed by Jones.

Dr. Wombwell, an orthopedist, acted as Jones' primary treating physician prior to referring her to Dr. Waller. On January 22, 2003, Dr. Wombwell gave Jones an impairment rating of 31% of the left upper extremity. (R. 205-06.) He indicated in a January 10, 2003 note

that Jones "has been able to continue work activity" and "has been stable for some time." (R. 232.) Indeed, throughout his treatment, Dr. Wombwell maintained that Jones was capable of working. Approximately two months after performing a left carpal tunnel release, release of Gunyon's canal and a left ulnar nerve transposition on Jones, Dr. Wombwell noted that she had full range of motion in her elbow and near full range of motion of the wrist and fingers and he released her to perform right hand work only. (R. 207, 230.) Thereafter, he consistently encouraged Jones to continue her work in a fast food restaurant. (R. 226-30.) During her last visit, before Jones began seeing Dr. Waller, Dr. Wombwell noted that, while Jones reported continued left hand and arm pain, she was able to tolerate the pain and continue working in the fast food restaurant and that "her condition has been stable for some time." (R. 225.)

Jones began seeing Dr. Waller on February 20, 2006. (R. 275.) Jones was still working in a fast food restaurant when she began seeing Dr. Waller; however, she told the doctor that her work activity increased her pain. (R. 275.) Jones stopped working in April 2006. (R. 57.) Shortly thereafter, on her May 22, 2006 visit, Dr. Waller released Jones from work. (R. 268.) Jones, complaining of continuing pain, continued to see Dr. Waller, and Dr. Waller prescribed various medications in an attempt to relieve her pain, including Cymbalta, Lyrica, Rozerem and Darvocet. (R. 274.)

The treatment notes from Dr. Waller document routine and conservative treatment and confirm Waller's diagnoses of neuropathic pain, but do not provide objective findings sufficient to support the functional limitations set forth in the August 20, 2007 Estimated Functional Capacity Form. During her treatment with Dr. Waller, Jones did not require any surgery, strong narcotic pain medicine or neurological referrals. Indeed, Dr. Waller's treatment notes show that while Jones has reduced grip strength and reduced range of motion in her left upper extremity,

she has remained essentially neurologically intact, with no sensory loss in her upper or lower extremities, normal lower extremities, normal gait, and full range of motion in her right upper extremity. (R. 276, 274, 272, 270, 268, 266, 290, 324, 319, 314, 310, 307, 303). Notably, Dr. Waller's assessments appear to be based primarily on Jones' reported symptoms and limitations, with less focus on objective findings. Further, Jones was able to work part-time as a hostess in a restaurant for nearly two years past her claimed disability onset date of July 28, 2004. (R. 57.)

In a thorough and well-supported opinion, the ALJ "considered Dr. Waller's multiple conclusory opinions that the claimant is unable to work...[and] reject[ed] these opinions," writing that they were not "supported by the longitudinal record with its limited physical findings and generally routine and conservative treatment, her own treatment notes, as well as the FCE and the opinions of other treating sources/specialists who have said that the claimant can work." (R. 22.) This decision is supported by substantial evidence. The ALJ specifically took into account Jones' diabetes, obesity and finger avulsion with residual neuropathy in finding she can perform a limited range of light work that accommodates a missing little finger on her left hand and avoids repetitive use of the left arm and workplace hazards, such as moving machinery and unprotected heights; only occasional reaching overhead and pushing or pulling with her right upper extremity, occasional balancing, stooping, kneeling, crouching or crawling; and no climbing ladders, ropes or scaffolds. (R. 17.) Notably, this RFC determination is more restrictive than those set forth by the reviewing state agency physicians, who found that Jones could perform a limited range of medium work. (R. 258-264, 282-288.) There is simply no support in the record for Dr. Waller's opinion that Jones is unable to work.[3] Waller's treatment was routine and conservative. Jones was able to work part time as a fast food hostess for nearly

---

[3] Dr. Waller released Jones to work "for administrative purposes" for 4 hours of work per day, five days a week with no lifting, carrying, or repetitive work for the right arm, and no lifting, carrying, repetitive or fine motor manipulation work for the left hand. (R. 319.) However, she opined that Jones was unemployable. (R. 319.)

two years after her alleged onset of disability. In addition, she cares for two of her grandchildren in her home, though she claims they are mostly self-sufficient. (R. 47.) Jones also does some cleaning, cooking, laundry and shopping, though she has help from her family, and serves monthly as a church usher. (R. 47, 146-149.)

Jones also argues on appeal that the ALJ improperly discounted her complaints of pain. Jones testified that she spends most of her day either sitting in her recliner or laying down in bed (R. 49) and argues this is consistent with a disabling condition. Jones argues that the ALJ wrongly based his finding that she was not credible solely on a misstatement regarding her weight gain. Jones testified that she had gained 50 pounds in the past year, which was not reflected in her medical records. A review of the ALJ's opinion shows that he based his determination that Jones was not fully credible on the fact that her testimony regarding her incapacitating pain was inconsistent with the objective medical evidence, as well as her reported activities of daily living. (R. 18-21.) The ALJ noted that Jones' treatment record is minimal, consisting of only 58 pages of treatment records, which show "routine, conservative and unremarkable" treatment. (R. 21.) Jones has not received nerve root block injections, nor has she required referrals to a neurologist or strong pain medication, which the ALJ interpreted to suggest that "her pain is not as debilitating as alleged." (R. 21.) The ALJ also considered the findings on examination, as set forth in Jones' treatment record, noting that she has remained "essentially neurologically intact on repeated physical evaluation." (R. 21.) Further, a 2004 FCE,[4] Dr. Wombwell, Dr. Dobyns and state agency physicians Dr. Surrusco and Dr. Duckwall,

---

[4] Jones argues that the ALJ improperly considered the FCE report because the report is not contained in the record. However, Jones does not state how she was prejudiced by the ALJ's reliance on the missing report. In his notes, Jones' treating physician, Dr. Wombwell, indicates that her FCE report showed Jones could perform light work that avoided repetitive use of her left arm. (R. 228.) The ALJ relied on the FCE report to restrict Jones to light work, which was more restrictive than the recommendation of two state agency doctors who opined Jones could perform a limited range of medium work. Thus, any reliance was not to Jones' detriment. Moreover, even without the FCE report, the ALJ's decision is supported by substantial evidence, including the conservative nature of Jones'

all concluded that plaintiff was able to perform full-time work with restrictions related to her left upper extremity limitations. (R. 228, 252-53, 258-64, 282-88.) Finally, the ALJ considered that she was able to work part time at the light exertional level after the alleged date of her disability and that her activities of daily living, which include caring for her grandchildren, undermined her credibility. (R. 21.) Thus, the ALJ's determination regarding credibility was based on Jones' entire record and not solely on her misstatement regarding weight gain.

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Jones' subjective allegation that she is disabled because of her pain, but rather must determine, through an examination of the objective medical record, whether she has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d at 592-93 (stating that objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers.") Then, the ALJ must determine whether Jones' statements about her symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not to interfere with those determinations. See Hatcher v. Sec'y of Health and Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given

---

treatment, minimal objective findings, Jones' ability to engage in her activities of daily living, and the opinions of Dr. Wombwell, Dr. Dobyns and state agency physicians Dr. Surrusco and Dr. Duckwall. Therefore, the court finds Jones' arguments regarding the FCE report without merit.

great weight.) As noted above, substantial evidence supports the ALJ's conclusion that the functional limitations Jones claims are not supported by her medical records.

Further, it is clear from the record that the ALJ considered all the evidence and formulated an appropriate hypothetical question to the vocational expert ("VE"), which fairly set out Jones' impairments. Indeed, while the state agency doctors opined that Jones could perform a limited range of medium work, the hypothetical question posed to the VE was even more limited, including only light work with restrictions related to Jones' missing little finger on the left hand. The record reflects that the ALJ considered all of Jones' impairments and posed to the VE an appropriate hypothetical question. As such, the ALJ's decision falls well within the analytical framework set out in Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

For these reasons, the Commissioner's decision is **AFFIRMED**.

V

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Jones is free from all infirmity. Careful review of the medical records compels the conclusion that Jones has not met her burden of establishing that she is totally disabled from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating Jones' claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. For these reasons the Commissioner's Motion for Summary Judgment (Dkt. #14) is **GRANTED**, and Jones' Motion for Summary Judgment (Dkt. #12) is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: July 5, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge